## CLUETT v. CLAFLIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 174. Submitted April 21, 1891. — Decided May 11, 1891.

Letters patent No. 156,880, granted November 17, 1874, to Robert Cluett for an improvement in shirts are void for want of invention.

THIS was a bill in equity to recover for the infringement of letters patent No. 156,880, granted November 17, 1874, to Robert Cluett for an improvement in shirts. In his specification the patentee stated the object of his invention to be "first, to avoid the folding in of the edges of the bosom, and the raw edges and loose threads thereof, which disfigure the bosom when so folded in; second, to stay the bosom, rendering it firmer in itself, and less likely to rumple or break; third, to avoid wrinkling of the bosom by the unevenness or fulling up of any one of the layers composing the bosom in any part thereof,

each and all of these three features having reference to the preparatory stages of manufacture, but to be completed in the bosom as attached to the shirt."

"Its construction consists in preparing and fixing the two or more layers in place smoothly in relation to each other, and then binding the edge with a folded strip of cloth like the bosom front, cut bias (or diagonally) or straight from the piece, so as to turn the curves of the bosom without tendency to gather on one side, and so as to suit round, square or any other shaped bosom, this binding extending entirely around the bosom (except at the neck and yoke) and holding the parts firmly in place by a line of stitches before the bosom is inserted in or placed on or attached to the body of the shirt, and finally attaching the bosom so prepared to the shirt body, in the manner hereinafter shown. The invention consists in the shirt bosom or shirt and bosom, so constructed, and not in the bosom alone."

His claims were as follows:

"1. In combination with a shirt body, a shirt bosom bound on the outer edge with a folded and stitched binding, and attached to the shirt body by a separate lining of stitching through such binding.

"2. The shirt bosom S, composed of two or more thicknesses of cloth, B L, bound on the outer edge with the binding B", and secured to the shirt front F by the line of stitching O."

Upon the hearing in the Circuit Court the invention was held to be invalid for want of patentable novelty, and the bill was dismissed. 24 Blatchford, 412, and 30 Fed. Rep. 921. Plaintiff thereupon appealed to this court.

*Mr. S. A. Duncan* and *Mr. J. A. Skilton* for appellants.

*Mr. David Tim* for appellees.

Mr. Justice Brown delivered the opinion of the court.

A large amount of testimony was taken in this case in the Circuit Court, but all that we find it necessary to consider

lies within a very narrow compass.  Stripped of its verbiage, this patent consists simply of a shirt bosom bound at its edges and stitched through its binding to the body of the shirt. The custom of binding the cut edges of cloth, either for ornament or to prevent ravelling, is almost as old as the art of making garments.  Indeed, the plaintiffs in this case frankly admit that "it was a matter of common experience to apply narrow bindings in various ways, in fact to apply 'folded bindings,' that is, bindings with their edges turned in under the body of the binding, to the edges of various parts of different parts of wearing apparel, to conceal the raw edges from sight and protect them from being frayed out.  Moreover, as in the case of the Marr shirt, the free edges of 'flies' designed to be buttoned on to the shirt front had had their edges finished up (potentially at least, as suggested in the Marr patent) by some sort of binding.  Dickies, also, had been made whose edges had been provided with a folded binding.  Firemen's shirts, also, had been made of flannel, on the bosom part of which an extra thickness, cut out shield-shaped, had been secured by sewing through its edges."

Their expert Benjamin admits that detached bosoms or dickies had been bound with a strip of material folded on their outer edge and stitched to the bosom by a line of stitching passing through the inner edge of the outer fold of the binding, the bosom and the outer edge of the binding.  Indeed, the patentee himself, who was sworn as a witness, admitted that his firm as early as 1869 or 1870 manufactured and sold shield-shaped detachable bosoms, or dickies, the raw edges of which had been bound by folded and stitched binding. It has also been the custom, time out of mind, to attach the bosom to the body of the shirt by a row of stitching, and in this connection plaintiffs admit that it was not new in the spring of 1874 (the established date of this invention) to make dress shirts by securing a linen bosom to the body of the shirt by a row of stitches passing through the edge of the bosom.

What then was there left for Cluett to invent?  Nothing, apparently, but a separate line of stitches through the binding attaching the bosom to the shirt.  But whether a separate line

of stitches shall be used for this purpose, or whether such stitches shall pass through the binding or inside of it, is obviously a question of mere convenience, involving nothing which, under a most liberal construction, could be held to be an exercise of the inventive faculty. If bosoms had always been worn before as a separate garment, it is possible that cutting away the front of the shirt and inserting the bosom might have involved some slight invention, though it is very doubtful if it would sustain a patent; but as bosoms had long been bound by a folded binding, and, with or without such binding, had been attached to shirts by stitching, it would seem to approximate more closely to invention to make such attachment by a row of stitching which did not than by stitches which did, pass through such binding. In view of the simplicity of this device we find it impossible to escape the conviction that plaintiffs are laboring under a strong bias of self-interest in asserting that this improvement was "the result of careful and prolonged study and experiment." We think this case must be added to the already long list of those reported in the decisions of this court wherein the patentee has sought to obtain the monopoly of a large manufacture by a trifling deviation from ordinary and accepted methods.

In the view we have taken of this patent we do not find it necessary to consider or discuss the voluminous testimony upon the subject of anticipation.

The decree of the court below is

*Affirmed.*

Mr. Justice Blatchford did not sit in this case, and took no part in its decision.